**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Franklin Earl BARRON,**
**Defendant-Appellant.**

**No. 82–1631**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

May 26, 1983.

Rehearing Denied June 20, 1983.

The Wesbrooks-Yandell Firm, Ron L. Yandell, Wichita Falls, Tex., for defendant-appellant.

R.H. Wallace, Jr., Asst. U.S. Atty., Fort Worth, Tex., for plaintiff-appellee.

Before GEE, RANDALL and TATE, Circuit Judges.

TATE, Circuit Judge:

The defendant Barron was convicted of two counts of committing perjury before a federal grand jury. 18 U.S.C. § 1623 (1978). On his appeal, he principally contends that the district court reversibly erred in admitting evidence of extraneous offenses and other acts, although he also argues that substantial evidence does not support the conviction on either count. Finding merit in neither contention, we affirm.

*Factual Context*

The perjury counts against the defendant Barron arose out of a 1981 grand jury investigation for criminal tax fraud of one David Terrell. The defendant Barron was a business associate and friend of the taxpayer Terrell. The thrust of the grand jury investigation was to determine whether Terrell had concealed income. In connection with this, the government attempted to establish this taxpayer's net worth each year from 1975 through 1979 by showing his assets and liabilities at the end of each year. (After establishing Terrell's beginning net worth and comparing it to the year-end assets and liabilities, his actual taxable income each year could be determined and compared with that reported.)

Specifically, with regard to the defendant Barron's appearance before the grand jury, the government was attempting to determine whether $15,500 purported loaned by Barron to Terrell in 1974 was a bona fide loan or was, instead, disguised assets of Terrell used to purchase certain property. The perjury counts were based upon Barron's testimony of Terrell's execution of a note in connection with such alleged loan, and that Terrell had repaid that loan with interest.

Terrell, the taxpayer, was the founder of the "World Mission Church" (later, the "New Testament Holiness Church"), which had branches in San Antonio, Texas and Bangs, Texas. The defendant Barron was the pastor of the San Antonio branch from 1972 until at least 1976, and the pastor of the Bangs branch from 1974 until at least through the trial in 1982. The evidence indicates that Terrell (who appeared monthly at the Texas branches) and the defendant Barron were closely associated in church affairs, as well as close personal friends.

The other principal actor in the events upon which the perjury counts are based is Westmoreland, a principal witness for the prosecution, who had joined the taxpayer Terrell's church following 1969 and donated large sums to it, who became a member of the San Antonio branch when it was founded in 1972, and who served as assistant pastor (with the defendant Barron as pastor) of the San Antonio branch of the church from 1974–1976.

1. *Sufficiency of the evidence.*

As a result of the defendant Barron's testimony before the grand jury about an alleged loan he had made to Terrell, he was charged with two counts of perjury: (1) that he had falsely testified that Terrell had signed a note for $15,500 in his presence, but, instead, knew that Terrell's signature had been placed on the note by Westmoreland in the defendant Barron's presence; and (2) that his testimony was false that Terrell had repaid him the note with interest, and that he committed perjury in testifying that he himself had reported the interest he had received from Terrell on his own income tax returns.

On appeal, Barron contends that the evidence was insufficient to support his conviction on either count. In examining for sufficiency, on review the appellate court should affirm, if viewing the evidence in the light most favorable to the jury verdict upholding the government's case, a reasonably-minded jury could accept the relevant evidence as adequate and sufficient to support the conclusion of the de-

fendant's guilt beyond a reasonable doubt. *See, e.g., United States v. Austin,* 585 F.2d 1271, 1273 (5th Cir.1978) and decisions there cited. This test is met here.

(a) *Execution of the note.* The defendant Barron had testified before the grand jury that he had loaned the taxpayer Terrell $15,500, and he produced what he said was the "original" note and testified that Terrell had signed it in his presence. At the trial, Westmoreland (associate of Barron and Terrell) testified that at Barron's urging he himself had signed Terrell's name to the note in a lawyer's office, having previously (before going to the office) practiced signing it from an exemplar of Terrell's signature furnished him by Barron. A handwriting expert testified that the signature was a simulated forgery of Terrell's handwriting and that it was highly probable that Westmoreland had (as he indeed testified) executed that forged signature.

The jury's conviction of this count was obviously based on sufficient evidence. Barron's contention that the jury should instead have accepted his own exculpatory explanation of inadvertency in his grand jury testimony [1] is simply a contention that the jury erred in not finding his testimony to be credible. Evaluation of credibility is for the trial jury, not the appellate court.

(b) *Non-reporting of interest on income tax.* At the trial, the defendant Barron testified that Terrell had repaid him on the 1974 note of $15,500, according to its terms, in three annual installments. He testified that Terrell had paid him in cash the three annual installments plus interest on the entire balance on the three anniversary dates, *i.e.,* $5,166.67 plus $900 interest on September 1, 1975; the same principal amount, plus $600 interest on September 1, 1976; and the same principal amount, plus $300 interest on September 1, 1977.

Again, the evidence is more than sufficient to prove Barron's perjury before the

grand jury that he had reported the interest as received from Terrell each year. His tax returns for the years in question showed no receipt of interest. The work papers he had furnished his tax-return preparer reflected only income from church donations or, in one year, sales of cattle. A statement of his assets and liabilities prepared for the use of the internal revenue service in late 1976 specifically showed no outstanding notes receivable (although, by Barron's trial testimony, at least $5,000 was still due him from Terrell on the note). Again, under the evidence before it, the jury could reasonably discount the credibility of Barron's exculpatory explanation of inadvertently furnishing his tax preparer lump-sum figures that included both his church income and the interest he had received from Terrell during the year.

### 2. *Extrinsic Acts Objections*

Over the defendant's objection, Westmoreland was permitted to testify briefly that, during his service as lay minister for the San Antonio branch (*i.e.,* 1972–1976), the defendant Barron had brought to him vehicles that had been contributed to Terrell by mostly out-of-state church members, and that Westmoreland had taken them and secured title papers in his own name, as directed by Barron.

The defendant objected to this testimony as not material to the prosecution for perjury. The stated purpose of the government for introducing this testimony was to show that, against the defendant Barron's denial that he had gotten Westmoreland to forge Terrell's signature to the note, Barron had used Westmoreland in other instances to help Terrell cover up income that he had received.

The trial court found the testimony relevant for this purpose and twice, at both the beginning and the end of the brief testimo-

---

1. At trial, Barron contended that he did not know who signed the "original" note, although admitting that Westmoreland had gone with him to the lawyer's office. He testified that in fact Terrell had later signed a "copy" of the note, which Terrell had taken then with him for

his own records—and which Terrell's lawyer had turned over to the tax-fraud investigators before his grand jury testimony. Barron claimed that his grand jury testimony in 1981 was inadvertent confusion over the circumstances of the 1974 note transaction.

ny, instructed the jury that it was admitted "for the sole and limited purpose of showing plan, scheme, device on the part of the defendant, if any, toward those matters [at issue], and for that purpose only,"—that if the jury considered the testimony at all, it should do so "for the sole and limited purpose as it has on the plan and scheme and device of hiding money or properties for tax purposes."

The defendant strongly argues on appeal that the district court erred in finding this evidence relevant to proof of the perjury counts against him, since he was not on trial for any type of conspiracy with Terrell or others that might serve to make the evidence complained of admissible to show some sort of plan, scheme, or design.

■■■ Under Fed.R.Evid. 404(b), evidence of other acts is "not admissible to prove the character of a person", but it may be admissible for other purposes, such as proof of "motive" or "plan". The district court's broad discretion in determining relevancy should not be overruled on appeal in the absence of substantial abuse. *United States v. Brown,* 692 F.2d 345, 349 (5th Cir.1982). We are not able here to characterize as an abuse of discretion the district court's determination that the probative value of the testimony outweighed its prejudice, *United States v. Beechum,* 582 F.2d 898, 911 (5th Cir.1978) (en banc), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244–45, 59 L.Ed.2d 472 (1979), also taking into consideration the trial court's attempt to allay any undue prejudice by the limiting instructions. *Id.,* 582 F.2d at 917.

Relevantly to the course of conduct motivating the defendant Barron's alleged perjury, the evidence of Barron's other church-related financial transactions in which he likewise used Westmoreland tended to show plan or design in transfer of Terrell's acquisitions through his church activities and, more pertinently, motive or intent of Barron in committing the perjury in order to help Terrell in Barron's somewhat similar use of Westmoreland as an intermediary in the transfer of Terrell's income or assets. The evidence also tended to prove the circumstances or factual chain of events leading to the charged offense. *Brown, supra,* 692 F.2d at 347.

Nor can we say, as contended by the defendant, that the limiting instruction insufficiently limited the jury's consideration of this testimony for restricted purposes only, Fed.R.Evid. 105; nor that the extrinsic evidence as to events of 1972–1976 was too remote in time to be probative of the perjury committed in 1981, when these events showing design or motive were contemporaneous with the events surrounding the execution of the note in 1974.

Thus, although the issue is not entirely free from doubt, we find no abuse of discretion by the district court in its admission of evidence of these other acts committed by Westmoreland at Barron's instructions on behalf of Terrell.

Barron also complains on appeal of the admission of testimony by Westmoreland of his opinion that the Terrell signature on the "copy" of the note was done by Barron. The sole objection at trial was that Westmoreland was not qualified or competent to testify as to whether the signature was indeed Terrell's and also whose it was. Upon finding that Westmoreland was familiar with both Terrell's and Barron's signatures, and that he had once seen Barron sign Terrell's name (R. III, p. 287), the district court permitted him to testify, stating the objection went solely to the weight of the evidence. *United States v. Kilgore,* 518 F.2d 496, 498 (5th Cir.1975), *cert. denied sub nom. Green v. United States,* 425 U.S. 950, 96 S.Ct. 1724, 48 L.Ed.2d 193 (1976).

■■ Under *Kilgore,* the showing made was sufficient for Westmoreland to testify as to his belief whether or not the signature was Terrell's and (although less clearly) whether Terrell's signature on the "copy" had been executed by Barron. (The government's handwriting expert subsequently testified that from the nature of the signature as reproduced on the exhibit of the "copy" in evidence (which he had examined prior to trial) he could not make an identification or elimination of anyone

(including Terrell himself) as the writer thereof. Even if there was error in permitting Westmoreland to testify as to his opinion that Terrell's signature on the copy was actually that of Barron, the testimony's weight before the jury could have been that of little more than obviously a speculative guess, and the error was harmless.)

*Conclusion*

Finding no reversible merit to the defendant's contentions, we AFFIRM the convictions.

AFFIRMED.