**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Edward Murray REED and Pamela Marie Burton, Defendants-Appellants.**

No. 83–4240
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Sept. 12, 1983.

Rehearing Denied Oct. 11, 1983.

B. Dexter Ryland, Alexandria, La., for Edward Reed.

Camille F. Gravel, Jr., Alexandria, La., for Pamela Burton.

D.H. Perkins, Jr., Asst. U.S. Atty., Shreveport, La., for plaintiff-appellee.

Before REAVLEY, RANDALL and WILLIAMS, Circuit Judges.

PER CURIAM:

Appellants Edward Murray Reed ("Ed Reed") and Pamela Burton ("Burton") (col-

lectively "defendants") appeal from their jury convictions of conspiracy to commit extortion and interstate travel to commit extortion. Ed Reed alone appeals his conviction of use of a telephone to commit extortion.[1] Edward Hughes Reed ("Chief Reed"), Ed Reed's father, was acquitted on all three counts. The defendants claim that the trial court erred in not granting their motion for a judgment of acquittal or, in the alternative, a new trial. For the reasons set forth below, we affirm.

I. FACTUAL BACKGROUND.

This case arose as a result of the alleged rape of Burton by David Wolfe, Jr. ("Wolfe"), the extortion victim. On August 24, 1982, while hitchhiking from Vicksburg, Mississippi to Houston, Texas, the defendants accepted a ride to Oakdale, Louisiana with Wolfe and several others. The defendants are white; Wolfe is black. The group stopped in Oakdale to attend a party being given by Green, the vehicle's owner. Wolfe testified that at the party, he offered Burton one hundred dollars to engage in sexual intercourse with him, and that Burton agreed and accepted the money. The two left in Green's van, telling the others that they were going to the store for more beer. Burton asserts that she left with Wolfe solely to keep him company while he got the beer. Wolfe drove to a secluded spot and he and Burton engaged in sexual relations. Burton claims that she was forced to do so by Wolfe's threats to kill her if she did not cooperate, whereas Wolfe claims that the act was consensual and, as recounted above, that he paid Burton for it. In either case, the two then returned to the party. Shortly thereafter, the defendants said they wanted to leave. After giving Ed Reed his telephone number, Wolfe drove them to the highway and dropped them off. At that point, Burton told Ed Reed that Wolfe had raped her. The defendants flagged down a passing police car and re-

ported the alleged rape in Oakdale. Wolfe was arrested that evening and was released on bail. He denied that he had raped Burton.

Two days later, on August 26, 1982, Wolfe received a telephone call from Chief Reed, who was the Chief Deputy Sheriff in Vicksburg, Mississippi. Chief Reed spoke of Wolfe's having raped Burton, and told Wolfe that Wolfe was in a lot of trouble and needed both a lawyer and "big money." Chief Reed said that he knew Wolfe had been in the penitentiary and that he was going to have the Governor of Louisiana revoke Wolfe's pardon.[2] A few minutes later, Ed Reed called Wolfe. Wolfe contends that Ed Reed told him that Burton's "two big bad brothers in California" would come to Oakdale and "get" Wolfe, but that Ed Reed could probably help Wolfe if Wolfe could come up with some money. After this conversation, Wolfe called the Oakdale Police Department, which notified the FBI. Wolfe recorded his end of Ed Reed's next telephone call in the presence of FBI agents. There was then a series of telephone calls between the Reeds and Wolfe, two more of which were partially recorded. Throughout these calls, Wolfe asserted that he had not raped Burton and that the Reeds knew it. Eventually it was agreed that Wolfe would pay Burton and the Reeds $1500 in exchange for the rape charge being dropped.

Pursuant to a plan coordinated with the FBI agents, the next morning Wolfe placed $1500 in one-hundred-dollar bills in a large envelope. Wolfe was wired for sound. At the site of delivery, to which the defendants and Chief Reed had driven from Mississippi in the latter's police car, Wolfe handed the envelope to Ed Reed. At Wolfe's request, Ed Reed wrote on the envelope, "We Pam Burton will drop charges on David Wolfe

1. Defendants were charged under the general conspiracy statute, 18 U.S.C. § 371 (1976), of conspiring to further an unlawful activity as defined in 18 U.S.C. § 1952(b)(2) (1976). Section 1952(b)(2) includes in its definition of unlawful activity any state laws prohibiting extortion. In this case the relevant state statute is La.Rev.Stat.Ann. § 14:66 (West 1974).

2. Although Chief Reed was acquitted on all counts, the substance of this conversation, as recounted by Wolfe, was unchallenged by the defense. Thus, we include Wolfe's unrebutted version.

Jr. Signed by Ed Reed." Wolfe then spoke to Chief Reed, who assured him that the charges would be dropped. After the defendants and Chief Reed left the scene, they were stopped by the FBI and arrested, and Burton relinquished the $1500.

After being arrested, both defendants told the FBI agents that they had traveled from Mississippi to Louisiana to obtain money from Wolfe in return for dropping Burton's rape complaint, and that the money was needed to pay off some bad checks that Ed Reed had written. Burton stated that at the payoff site she had told the Reeds that if Wolfe didn't have the money, she would continue to press charges.

## II. SUFFICIENCY OF THE EVIDENCE.

The defendants contend that the trial court should have granted their motion for acquittal or, in the alternative, their motion for a new trial, because there was insufficient evidence to support their convictions. In responding to this argument, we note initially that the standard with regard to the sufficiency of evidence on a motion of acquittal is both clear and well established. As articulated by the Supreme Court in *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the formulation commonly applied holds: "It is not for [an appellate court] to weigh the evidence or to determine the credibility of witnesses. *The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Id.* at 80, 62 S.Ct. at 469 (emphasis added). *See also Burks v. United States,* 437 U.S. 1, 17, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978) ("appellate reversal on grounds of insufficient evidence ... will be confined to cases where the prosecution's failure is clear").

■ This circuit's standard in reviewing sufficiency of evidence claims was recently articulated as follows:

It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. A jury is free to

choose among reasonable constructions of the evidence.

*United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982) (en banc), *aff'd on other grounds,* —— U.S. ——, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). The scope of review is the same whether the evidence is direct or circumstantial. *See id.* n. 3.

We think it clear that this case did not involve any prosecutorial failure to present substantial evidence of a conspiracy between the defendants. In *United States v. Arredondo-Morales,* 624 F.2d 681 (5th Cir. 1980), we held:

In order to convict a defendant of conspiracy, the existence of a conspiracy must be established with substantial evidence showing the presence of an agreement between two or more persons to commit a crime and an overt act in furtherance of the agreement by one of the conspirators[,] ... and with substantial evidence that each conspirator knew of, intended to join, and participated in the conspiracy.

*Id.* at 683 (citations omitted).

Under Louisiana law, extortion consists of:

[T]he communication of threats to another with the intention thereby to obtain anything of value .... The following kinds of threats shall be sufficient to constitute extortion:

(1) A threat to do any unlawful injury to the person or property of the individual threatened or of any member of his family or of any other person held dear to him;

(2) A threat to accuse the individual threatened or any member of his family or any other person held dear to him of any crime.

   *    *    *    *    *    *

La.Rev.Stat.Ann. § 14:66 (West 1974). According to this standard, there was, at the least, substantial evidence that the defendants agreed to extort $1500 from Wolfe. The jury was entitled to believe Wolfe's testimony that Ed Reed threatened vengeance by Burton's "big bad brothers."

That Burton made no direct threats does not negate her culpability for those made by Ed Reed, since the act of one conspirator in furtherance of the conspiracy may be imputed to all co-conspirators. Furthermore, Burton herself stated that, had Wolfe not had the money on the morning of the payoff, she would have continued to press the rape charge. It is undisputed that Ed Reed's threats were communicated to Wolfe over the telephone from Mississippi, and that the defendants planned to and did drive from Mississippi to Louisiana to collect the money.

■ The existence of a conspiracy does not have to be shown by direct evidence, but can be inferred from the circumstances. *See Glasser, supra,* 315 U.S. at 80, 62 S.Ct. at 469; *Bell, supra; United States v. Vergara,* 687 F.2d 57, 61 (5th Cir.1982); *cf. United States v. Barrera,* 547 F.2d 1250, 1255 (5th Cir.1977) (no intrinsic difference between direct and circumstantial evidence). The agreement need not be explicit. It is sufficient if there is concerted action, and if the conspirators work together with a common "design, purpose and understanding." *American Tobacco Co. v. United States,* 328 U.S. 781, 810, 66 S.Ct. 1125, 1139, 90 L.Ed. 1575 (1946). The jury is entitled to infer a defendant's state of mind from such activities. Although the defendants contend that they were pursuing what they believed to be a legitimate civil settlement of Burton's claim against Wolfe, the jury was entitled to credit Wolfe's denial of the rape charge. It could then infer that Burton falsely accused Wolfe in order to obtain money to pay off the bad checks Ed Reed had written. In other words, there was substantial evidence presented from which the jury could infer that the defendants possessed the requisite intent.

■ In light of the above, we hold that the evidence was sufficient to sustain the defendants' convictions. Thus, the trial court did not err in denying defendants' motions for acquittal or a new trial.

## III. CREDIBILITY AND EVIDENTIARY DETERMINATIONS.

The defendants claim that the district court erred in denying them a new trial in the interests of justice. Defendants pose the following arguments: (1) that Wolfe's testimony was unworthy of belief; (2) that their convictions were influenced by evidence concerning Chief Reed which, they contend, would be inadmissible in a new trial; and (3) that evidence concerning Wolfe's prior arrests for rape was improperly excluded. We will discuss these arguments in turn.

### A. Wolfe's Credibility.

Defendants aver that Wolfe's testimony was so incredible as to be unworthy of belief because it showed him to be "prone to grandiose exaggerations and delusions." Brief for Appellant Reed at 11; Brief for Appellant Burton at 12. Defendants urge that Wolfe's status as a convicted felon was a factor "causing [sic] further doubt on his credibility." Brief for Appellant Reed at 12; Brief for Appellant Burton at 13.

■ The jury is the ultimate judge of the credibility of witnesses. Wolfe's credibility or the lack thereof was submitted to the jury, which assigned it whatever weight it deemed proper. This court will declare testimony incredible as a matter of law only under extraordinary circumstances, when it is "so unbelievable on its face that it defies physical laws." *United States v. Lerma,* 657 F.2d 786, 789 (5th Cir.1981), *cert. denied,* 455 U.S. 921, 102 S.Ct. 1279, 71 L.Ed.2d 463 (1982). There is no indication in the record that Wolfe's testimony approached this level. Furthermore, there was evidence of Wolfe's prior convictions before the jury. The extent to which his credibility was impaired thereby was properly left to that body to decide. The district court correctly considered the defendants' contentions in this regard to be without merit.

### B. Evidence Regarding Chief Reed.

■ The defendants also contend that evidence concerning Chief Reed, allegedly im-

puted to the defendants because they were charged as co-conspirators, would be inadmissible against them in a new trial. Defendants cite no authority for this argument, relying instead on the bald assertion that "[s]ince Chief Reed was acquitted, all of that evidence was, in effect, improperly before the court and should not have been considered in determining the [defendants'] guilt." Brief for Appellant Reed at 11; Brief for Appellant Burton at 12.

The sparse authority on this point indicates that the evidence with regard to Chief Reed would be admissible against the defendants in a new trial. In *Kamanosuke Yuge v. United States,* 127 F.2d 683 (9th Cir.), *cert. denied,* 317 U.S. 648, 63 S.Ct. 43, 87 L.Ed. 522 (1942), the Ninth Circuit held that the jury's failure to convict one defendant of conspiracy does not render inadmissible testimony with regard to his acts and declarations as against other co-conspirators. Although *Kamanosuke* dealt with the admissibility of this kind of evidence in the context of one trial, we think that the Ninth Circuit's rationale is equally, if not more, applicable to the instant circumstances:

> To hold with appellants ... would make the trial of conspiracy charges practically impossible. It would require a trial judge in each instance to foresee just what decision the jury will reach as to each alleged co-conspirator before he could rule upon the admissibility of evidence of acts and declarations of the co-conspirators. Such a rule applied in a jury case would practically abrogate the rule of responsibility of all members of a conspiracy for acts of the other conspirators.

*Id.* at 689. To find in favor of the defendants in this case would mean that the acquittal of one co-conspirator, where any evidence was admitted as to his or her acts or declarations in furtherance of the conspiracy, would always serve as the basis for a new trial for the convicted co-conspirators. Such a result is clearly untenable.

More recently, in *United States v. Bass,* 472 F.2d 207 (8th Cir.1973), the Sixth Circuit held that the acquittal of one defendant in a prior proceeding did not preclude the admission, in a subsequent trial involving different defendants, of testimony regarding his role in a conspiracy involving other defendants and co-conspirators.[3]

In light of this holding and that in *Kamanosuke, supra,* we hold that the trial court committed no error in denying defendants' motion for a new trial on this basis.

### C. Evidence Regarding Wolfe's Prior Arrests for Rape.

■ Finally, the defendants assert that the trial court erred in excluding evidence with regard to Wolfe's prior arrests for rape. They argue that this evidence was admissible under Fed.R.Evid. 404(b) as showing a pattern of behavior impeaching Wolfe's assertion that Burton consented to have sex with him. *See* Brief for Appellant Burton at 13–15. The admission or exclusion of evidence at trial is a matter within the discretion of the trial judge, and such evidentiary rulings will be upheld unless they constitute an abuse of discretion. *See United States v. Barron,* 707 F.2d 125 (5th Cir.1983); *United States v. Shaw,* 701 F.2d 367 (5th Cir.1983); *United States v. Cochran,* 697 F.2d 600 (5th Cir.1983). We find no such abuse here.

■ The first time that the defendants attempted to raise the issue of Wolfe's prior arrests was during the examination of Thomas Davis, a member of the Allen Parish, Louisiana, Sheriff's Department. The defense sought to question Davis about the contents of an investigative report prepared by FBI agent Roberson, which apparently indicated that Davis had told Roberson of Wolfe's prior rape arrests. This testimony was properly excluded by the trial court on the basis of Fed.R.Evid. 608(b), which provides: "Specific instances of the conduct of

---

**3.** The Ninth Circuit has held that when one defendant is acquitted by the court at the close of the Government's case, evidence with regard to statements made by him in furtherance of the alleged conspiracy become inadmissible as against the remaining defendants. *United States v. Ratcliffe,* 550 F.2d 431, 433 (9th Cir. 1976). The case at hand does not, however, present such a situation.

a witness, for the purpose of attacking or supporting his credibility ... may not be proved by extrinsic evidence." Under this rule, it is well settled that it is reversible error to permit the introduction of extrinsic evidence to prove misconduct that did not result in a conviction. *See United States v. Cluck*, 544 F.2d 195 (5th Cir.1976); *see also United States v. Cohen*, 631 F.2d 1223 (5th Cir.1980).

■ The defense next attempted to raise this issue during its cross-examination of Wolfe. At that time, the defendants' attorneys sought to question Wolfe with regard to statements he made to investigators about the prior rape charges. The court again refused to permit the subject to be raised, relying again on rule 608(b). Because the rule specifically contemplates the inadmissibility of such a prior statement, the trial court was correct in so ruling.

Moreover, rule 404(b) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Fed.R.Evid. 404(b). *See generally* Wright & Graham, *Federal Practice and Procedure: Evidence* § 5239 (1978). To the extent, therefore, that rule 404(b) provided a basis for the court's rulings, we would also affirm. Because the defendants' purpose in attempting to introduce such evidence was precisely what is forbidden under this rule, its exclusion was proper.

The judgment of the district court is AFFIRMED.