NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 04a0128n.06
Filed: November 23, 2004

No. 03-2000

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

TEON MITCHELL,

     *Petitioner-Appellant*,

v.

BLAINE LAFLER, Warden,

     *Respondent-Appellee*.

)
)
) On Appeal from the United States
) District Court for the Eastern
) District of Michigan
)
)
)

Before: **NELSON** and **COOK**, **Circuit Judges**; **WEBER, District Judge**.[*]

**PER CURIAM.**

Petitioner-Appellant Teon Mitchell brings this *pro se* appeal from a district court order denying his petition for writ of habeas corpus. For the reasons stated below, we affirm.

**I.**

In denying Mitchell's habeas petition, the district court set forth findings of fact as summarized below, which Mitchell does not appear to challenge in any material fashion.

On September 3, 1997, a man entered a gas station in Flint, Michigan, between 11:30 and 11:40 a.m., brandishing a firearm and demanding money from the gas station attendant and four people eating lunch in a back room. The attendant and one other man handed over cash totaling $321 to $341 to the assailant, but another man pulled out a .38 revolver and fired a single shot, striking the left side of the robber's chest. The robber fired two shots from his gun, then fled in a

---

[*]The Honorable Herman J. Weber, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

car later described by witnesses as a smoke gray Pontiac Bonneville with license plate # NP3083.

While listening to radio transmissions about the robbery, another police officer overheard a report that a gunshot victim had arrived at a hospital within a mile and a half of the shooting site. That officer proceeded to the emergency room, where he found Mitchell being treated for gunshot wounds to the right chest and arm. Mitchell twice told the officer that his name was Teon Williams, before giving his correct name. When asked who shot him, Mitchell said that he did not want to answer the officer's questions.

Two days later, all but one of the robbery victims participated in a police photo lineup, but failed to identify Mitchell. On October 15, 1997, the same victims participated in a physical lineup. At that time, two victims acknowledged that Mitchell resembled the robber, but neither was able to make a positive identification. At the preliminary hearing and at trial, however, all four victims positively identified Mitchell as the robber, although three acknowledged that Mitchell looked considerably heavier [25-30 lbs., according to one] than the robber, while another testified that robber looked "meaner and rougher" and perhaps bigger than Mitchell. Another witness who had been pumping gas outside of the station during the robbery also positively identified Mitchell at trial, despite the fact that on the day of the robbery she had told police that she had been looking down and could not describe the robber's face.

Police discovered $311.26 in Mitchell's clothing at the hospital. In addition, after receiving information that the getaway car may have been driven by a friend of Mitchell's, police located a similar Pontiac Bonneville, with the license # NPW803, at the home of the wife of one of Mitchell's friends. The car apparently belonged to a sister of the friend's wife. Mitchell's mother testified that he left the house on September 3 in a "dark," medium-sized car that could have been a Pontiac.

2

At trial, Mitchell testified that he received the two gunshots wounds in a drive-by shooting, and denied committing the crimes charged. Nevertheless, a jury convicted him of two counts of armed robbery, three counts of assault with intent to commit armed robbery, one count of assault with intent to commit murder, one count of assault with intent to do great bodily harm less than murder, one count of possession of a firearm in the commission of a felony, one count of possession of a firearm by a felon, and being a second felony habitual offender.

After pursuing his appeals through the Michigan state courts, Mitchell filed the petition for writ of habeas corpus denied by the federal district court. The single issue on appeal, as set forth in the certificate of appealability granted by this Court, is as follows:

> whether Mitchell was deprived of his Fifth Amendment right to silence and his Fourteenth Amendment right to due process when the trial court allowed the prosecutor, in his case in chief, to elicit as substantive evidence of guilt the fact that Mitchell declined to answer when a police officer asked him about the shooting.

**II.**

In reviewing a district court's denial of a petition for a writ of habeas corpus under 28 U.S.C. § 2254, this Court considers all legal conclusions *de novo*. *Armstrong v. Morgan*, 372 F.3d 778, 781 (6th Cir. 2004), *petition for cert. filed*, ___ U.S.L.W. ___ (U.S. Sept. 16, 2004) (No. 04-6637). Mitchell's sole claim on appeal is that the trial court's admission of evidence concerning Mitchell's prearrest silence was contrary to or an unreasonable application of federal law.

A federal court may grant a habeas corpus petition only when it concludes that the state adjudication of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an

4

unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2). A state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (O'Connor, J., concurring). In analyzing a state court decision under that standard, this Court "may only look to Supreme Court precedent as of the time of the state court's decision." *Fowler v. Collins*, 253 F.3d 244, 249 (6th Cir. 2001)(citing *Williams*, 529 U.S. at 411).

The Supreme Court has held that use of a defendant's prearrest silence for impeachment purposes does not violate the Fifth Amendment right against self-incrimination or the Fourteenth Amendment right to due process. *Jenkins v. Anderson,* 447 U.S. 231, 238-39 (1980). In *Jenkins*, however, the Court specifically declined to address whether prearrest silence may implicate Fifth Amendment concerns under other circumstances. *Id.* at 236 n.2; *see also Portuondo v. Agard*, 529 U.S. 61, 69-70 (2000)(reiterating *Jenkins'* limited holding)*; Combs v. Coyle*, 205 F.3d 269, 281 (6th Cir.)(acknowledging *Jenkins*' deferral re prearrest silence as substantive evidence of guilt), *cert. denied*, 531 U.S. 1035 (2000). Notwithstanding this Court's holding in *Combs*, *supra* at 283, that prearrest silence may merit Fifth Amendment protection, Section 2254(d)'s deferential standard does not allow for habeas relief in the absence of Supreme Court precedent. The lack of a Supreme Court decision regarding whether the prosecution may introduce evidence of a defendant's prearrest silence during its case in chief precludes federal habeas relief in this matter.

5

**III.**

As our *de novo* review confirms that the material facts of the case are not in dispute, that the district court correctly applied the law, and that further duplication of the district court's well-reasoned opinion would serve no useful jurisprudential purpose, we AFFIRM the district court order and judgment denying Mitchell's petition for writ of habeas corpus.