**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a1234n.06

**No. 11-1559**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Nov 29, 2012*
DEBORAH S. HUNT, Clerk

KEVIN TROY BOND, )
)
    Petitioner-Appellant, )
) ON APPEAL FROM THE
    v. ) UNITED STATES DISTRICT
) COURT FOR THE EASTERN
) DISTRICT OF MICHIGAN
GREG MCQUIGGAN, Warden, )
)
    Respondent-Appellee. )
)

BEFORE: GILMAN, GIBBONS, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. Petitioner Kevin Troy Bond seeks habeas relief from his convictions in Michigan state court on ten counts, including first-degree premeditated murder. Bond challenges the sufficiency of the evidence, alleges prosecutorial misconduct, and contends that his trial counsel rendered ineffective assistance. The Michigan Court of Appeals considered and rejected each of these claims. Because Bond has not established that the state court's decision contravened or unreasonably applied clearly established federal law, his claims do not warrant habeas relief.

This case arose from a drive-by shooting that took place on July 19, 2004. According to the state, Bond and several other men engaged in the shooting on the north side of Saginaw, Michigan, in apparent retaliation for the July 18th murder of Bond's best friend, Omar McKnight. At trial, witnesses testified that the day after McKnight was killed, Bond and others gathered at McKnight's

mother's house. Afterwards, Bond and five others began driving around Saginaw. The other passengers in the van testified that Bond expressed his desire to seek retribution for Omar's killing. As they drove through north-side Saginaw, they passed a group of young men attempting to jump start a car beside the road. Bond allegedly urged the driver to turn the van around. The driver turned and slowed the van as they approached the men by the stalled car. The state alleged that Bond was armed with a gun, that Bond and three others began shooting at the men as they passed by, and that Bond continued shooting through the rear window even as the van sped away. Nicholas Green was shot multiple times and died of massive internal bleeding.

At trial, Bond's version of events differed in several respects. He claimed that he had entered the van to get a ride to his grandmother's house, which was only a ten-minute drive from McKnight's mother's house. He also denied possessing or shooting a gun at any point, and denied knowing that others in the van planned to shoot anyone. He claimed that he was "shocked" when others in the van began firing. He also denied making any statements about seeking retribution for Omar McKnight's murder. The jury nevertheless found Bond guilty on all counts, and he was sentenced to multiple life terms in prison.

Before the Michigan Court of Appeals, Bond raised the same three claims he raises in his habeas petition. Rejecting these arguments, the court affirmed his conviction. The court determined that, when viewed in the light most favorable to the prosecution, the evidence against Bond was sufficient to establish the premeditation and deliberation elements required to convict him of first-degree murder. In the court's view, the testimony of Bond's accomplices in the van, along with the

circumstances surrounding the shooting, established Bond's motive and intent to commit violence against individuals from North Saginaw.

Reviewing for plain error, the court also determined that the prosecutor did not engage in prejudicial misconduct because (1) the prosecutor attempted to avoid unnecessary "gang" references, (2) evidence of Bond's prearrest silence was properly admissible, and (3) Bond opened the door to full development of his post-arrest demeanor (including his refusal to answer questions) when he created a false impression that he had cooperated with law enforcement. Finally, reviewing for errors apparent in the trial record, the court held that Bond's trial counsel was not constitutionally ineffective because counsel could not be faulted for failing to raise meritless objections to the prosecutor's allegedly prejudicial conduct. The Michigan Supreme Court denied Bond leave to appeal.

Bond then filed a *pro se* habeas petition in federal district court, which the magistrate judge recommended denying. The magistrate judge concluded that the Michigan Court of Appeals reasonably applied the test in *Jackson v. Virginia*, 443 U.S. 307, 324 (1979), in finding the evidence sufficient to support the verdict. On the prosecutorial-misconduct claim, the magistrate judge concluded that the Michigan Court of Appeals reasonably held that (1) the "gang" references did not create any unfairness at trial, (2) comments on Bond's prearrest silence did not violate clearly established federal law because the Supreme Court has not directly addressed the issue of prearrest silence, and (3) comments on Bond's post-arrest silence were permitted under the *Doyle* exception. *See Doyle v. Ohio*, 426 U.S. 610, 620 n.11 (1976). Finally, the magistrate judge concluded that the

Michigan Court of Appeals reasonably applied the *Strickland* standard for ineffective assistance, *see Strickland v. Washington*, 466 U.S. 668 (1984), in finding that Bond's counsel's performance was not objectively deficient and that any deficiency did not prejudice Bond. The district court adopted the magistrate judge's recommendation and denied Bond's habeas petition. This appeal followed.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), "an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The Supreme Court has indicated that the standard of "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law" is "difficult to meet," because the purpose of AEDPA is to ensure that federal habeas relief functions as a "guard against extreme malfunctions in the state criminal justice systems and not as a means of error correction." *Greene v. Fisher*, 132 S. Ct. 38, 43 (2011).

Bond's attack on the sufficiency of the evidence is not persuasive because he fails to show (1) that the eyewitness account of Dilanjan Miller—one of the other men in the van—is unreliable as a matter of law, or (2) that the evidence is constitutionally insufficient to sustain the verdict. Bond would be entitled to habeas relief only if the state court's determination that the evidence was

sufficient contravened or unreasonably applied federal law, which dictates that evidence is constitutionally insufficient only when the reviewing court determines, after viewing the record in the light most favorable to the prosecution, that no rational trier of fact could have found proof of guilt beyond a reasonable doubt. *See Jackson*, 443 U.S. at 324. Bond argues that because Miller's testimony conflicted with the physical evidence and undisputed facts in the case, it was unreliable as a matter of law, but this argument misreads the law. Testimony is deemed "incredible as a matter of law only under extraordinary circumstances, when it is so unbelievable on its face that it defies physical laws." *United States v. Reed*, 715 F.2d 870, 874 (5th Cir. 1983). In this case, Miller testified that only two men fired guns, while the ballistics expert testified that four guns had been fired. Bond erroneously insists that this apparent contradiction established that Miller's testimony was unreliable, but the jury and state appellate court found otherwise.

Under AEDPA, we must defer not only to the judgment of the jury in evaluating and crediting Miller's testimony, but also to the Michigan Court of Appeals in affirming the verdict that was based partly on that evidence. Although the ballistics expert contradicted Miller's testimony, the jury could have believed Miller and rejected the ballistics expert, or the jury could have believed that Miller saw Bond firing a gun even if Miller was mistaken about how many guns were being fired. Bond has not shown that Miller's testimony was so incredible as to require us to overturn both the jury's credibility determination and the state appellate court's judgment affirming the verdict.

In addition, the evidence against Bond is not insufficient because "the testimony of a single, uncorroborated prosecuting witness or other eyewitness is generally sufficient to support a

conviction." *Brown v. Davis*, 752 F.2d 1142, 1144 (6th Cir. 1985). Even if Miller's testimony was the only evidence directly implicating Bond in the shooting, the evidence would not necessarily be insufficient as a matter of law. We have long held "that the testimony of [a] victim alone is constitutionally sufficient to sustain a conviction." *Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008). And as the Supreme Court stated long ago in *Caminetti v. United States*, "there is no absolute rule of law preventing convictions on the testimony of accomplices if juries believe them." 242 U.S. 470, 495 (1917). Bond's evidentiary insufficiency argument does not warrant habeas relief.

With respect to Bond's prosecutorial-misconduct claim, the state argues that this claim is procedurally defaulted because Bond failed to object at trial as required by Michigan's contemporaneous-objection rule. Since addressing the procedural default argument requires us to examine the merits of Bond's ineffective-assistance claim, which in turn may require us to determine whether the prosecutor committed any misconduct, we will address the merits of the misconduct claim directly.[1]

Bond's prosecutorial-misconduct claims are unpersuasive because he has not established that the alleged misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process," as required for a constitutional prosecutorial-misconduct claim. *Darden v.*

---

[1] While a federal court generally may not consider a claim for habeas relief that was rejected by a state court for failure to comply with the state's procedural rules, *see Hargrave v. Yukins*, 374 F.3d 383, 387 (6th Cir. 2004) (citing *Harris v. Reed*, 489 U.S. 255, 262 (1989)), in this case, Bond claims that his trial counsel's ineffective assistance establishes cause and prejudice to excuse the default, *see Girts v. Yanai*, 501 F.3d 743, 755 (6th Cir. 2007). Because Bond's prosecutorial-misconduct claim is meritless, we do not need to reach the issue of whether it was procedurally defaulted.

*Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

Bond's argument that the prosecutor improperly made numerous "gang" references is meritless because the Michigan Court of Appeals reasonably concluded that, when viewed in context, these gang references did not prejudice Bond. In determining whether the alleged impropriety amounts to a constitutional violation, we must consider "(1) the likelihood that the remarks would mislead the jury or prejudice the accused, (2) whether the remarks were isolated or extensive, (3) whether the remarks were deliberately or accidentally presented to the jury, and (4) whether other evidence against the defendant was substantial." *Bowling v. Parker*, 344 F.3d 487, 512-13 (6th Cir. 2003). Under this standard, the prosecutor's comments did not render the trial fundamentally unfair.

Several references to gangs appear on the record, yet all but one were isolated witness references unsolicited by the prosecutor—and in the one instance when the prosecutor used the term, it was in response to a witness. At a pretrial conference, the prosecutor told the court, with respect to making gang references, "I don't intend to use that terminology in any type of excess, but it could come up," to which the court responded, "Tell your witnesses not to use it. Okay." However, earlier in the same exchange, the court agreed to allow the prosecutor to explore the general theme of territorial animosity as a potential motive for the shooting. During the redirect examination of Dilanjan Miller, the prosecutor asked, "And in your experience of living in Saginaw, is there any type of, you know, territorial or neighborhood disputes in Saginaw?" The witness responded, "Yeah,

yeah, North Side and East Side gangs." In a second exchange, when asked whether there was "any type of dispute or hard feelings between people who live in one neighborhood versus another" in Saginaw, witness Raheem Nash responded, "Gang people," and when asked to elaborate, he responded, "Territory." A third reference arose when a police detective, in describing a local drug and gang unit, testified, "Safe Streets is a group of people that handles the drug and gang activity."

It is unlikely that these few instances where the word "gang" was uttered misled or prejudiced the jury, because the gang references were neither extensive nor deliberate, and they did not create a sustained pattern of misconduct. Moreover, plentiful witness testimony, independent of gang references, implicated Bond. At no point did the prosecutor or any of the witnesses directly state or even suggest that Bond was a member of a gang; the prosecutor raised the issue of tension between North-Side and East-Side Saginaw only to provide the jurors with context for the shooting.

Bond also errs in arguing (1) that the prosecutor improperly used Bond's prearrest silence as substantive evidence of guilt, in violation of his Fifth Amendment right against self-incrimination, and (2) that because the state court did not properly address the prosecution's use of his prearrest silence as substantive evidence of guilt, we must review the claim *de novo*.

We apply AEDPA deference to the Michigan Court of Appeals' judgment with respect to this issue because the state court sufficiently addressed Bond's claim that the prosecution improperly used his prearrest silence as substantive evidence of his guilt. Bond argues that the court considered the prosecution's use of his prearrest silence only in the context of impeachment. Although the case law cited in the court's opinion concerned the use of prearrest silence for impeachment purposes,

the court's analysis was not so limited. Instead the court found that Bond's prearrest silence was admissible "[b]ecause [Bond] was not under arrest in the face of an accusation at the time he was questioned" and remained silent. This analysis clearly applies to Bond's argument that his prearrest silence could not be used as substantive evidence of guilt. We therefore apply AEDPA deference to this claim that the state court considered and rejected.[2]

Under AEDPA, Bond's claim does not entitle him to relief because the Supreme Court has expressly declined to consider "whether or under what circumstances prearrest silence may be protected by the Fifth Amendment." *Jenkins v. Anderson*, 447 U.S. 231, 236 n.2 (1980). Since we may grant habeas relief only when the state adjudication of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), it would be improper to grant habeas relief on an issue of federal law that the Supreme Court has not yet addressed. In *Jones v. Trombley*, we held that the petitioner was not entitled to habeas relief because the state court's rejection of his claim was not based on an unreasonable interpretation of the facts or on an unreasonable application of controlling Supreme Court precedent, since the constitutionality of using a defendant's pre-Miranda silence as substantive evidence of guilt had not been addressed by the Supreme Court. 307 F. App'x 931, 932–33 (6th Cir. 2009). Similarly, in *Mitchell v. Lafler*,

---

[2] Alternatively, AEDPA deference applies because we have squarely endorsed the view that "a federal constitutional claim reviewed by a state court for 'plain error' can be considered 'adjudicated on the merits' for the purpose of receiving deference under AEDPA." *Fleming v. Metrish*, 556 F.3d 520, 532 (6th Cir. 2009)

we held that "[n]otwithstanding [the Sixth Circuit's] holding in *Combs* that prearrest silence may merit Fifth Amendment protection, Section 2254(d)'s deferential standard does not allow for habeas relief in the absence of Supreme Court precedent." 118 F. App'x 24, 27 (6th Cir. 2004) (citing *Combs v. Coyle,* 205 F.3d 269, 283 (6th Cir. 2000).

Bond also errs in arguing that the prosecutor committed misconduct by commenting on his postarrest silence. The Michigan Court of Appeals reasonably concluded that the prosecutor's comments, when viewed in context, fell within the *Doyle* exception. Two comments are at issue here. First, during his direct examination of Detective Sandra Paetz, the prosecutor asked, "So it was only when he learned that you were there to talk about the murder that he decided he didn't want to talk to you?" to which Paetz responded, "That's correct." In his closing argument, the prosecutor summarized the same encounter: "The police went over to the jail once [Bond] was placed there by another judge in a different case . . . and tried to talk to him, and advised him of all of his rights, and he gave up those rights. And then as soon as he found out that the topic that the detectives wanted to talk about with him was the murder, get out of here, I've got nothing to say to you. That's the truth. That's the truth."

Although it is generally improper for a prosecutor to comment on a defendant's postarrest silence, "postarrest silence could be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest." *Doyle*, 426 U.S. at 620 n.11. On cross-examination, Bond volunteered, in response to an unrelated question, the fact that he turned himself in to the police and wanted to talk to them. This testimony

fit in with an overall defense strategy in which Bond portrayed himself as an ignorant bystander to the shooting; he testified that he was present in the van only to get a ride to his grandmother's house, was unarmed, had no idea that the others were planning a drive-by shooting, and was "shocked" when the shooting occurred. In keeping with this theme, Bond attempted to cast his police interview as an effort to cooperate with the investigation. Bond's attempt to portray himself as cooperative clearly opened the door to the prosecutor's questions challenging his defense theory, and the Michigan Court of Appeals reasonably concluded that Bond's misconduct claim relies on a misreading of *Doyle*.

Finally, Bond's ineffective-assistance claim is meritless because the Michigan Court of Appeals reasonably concluded that Bond's counsel's performance was not deficient. To establish ineffective assistance under *Strickland*, Bond must show (1) that counsel's performance was objectively deficient, and (2) that the deficient performance prejudiced the defense, rendering the proceeding fundamentally unfair and unreliable. 466 U.S. 668, 687 (1984). In reviewing an attorney's performance, we must consider "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011). Because Bond claims that his counsel was ineffective for failing to object to the prosecutor's misconduct, the success of his ineffective-assistance claim depends on the success of his prosecutorial-misconduct claim. As discussed previously, the Michigan Court of Appeals reasonably concluded that Bond's prosecutorial-misconduct claims were meritless; therefore the court was also

reasonable in concluding that Bond's counsel's failure to object did not constitute deficient performance under *Strickland*.  *See Bradley v. Birkett*, 192 F. App'x 468, 475 (6th Cir. 2006).

Since Bond has failed to meet the first prong of the *Strickland* test, we need not reach the second prong.  *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one.").  In sum, Bond's ineffective-assistance claim is unpersuasive.

The district court's judgment is affirmed.