UNITED STATES of America,
Plaintiff-Appellee,

v.

Rudolfo SILVA a/k/a Rudy Silva,
Defendant-Appellant.

No. 84–2195
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Nov. 28, 1984.

Eustorgio Perez, Laredo, Tex., for defendant-appellant.

Daniel K. Hedges, U.S. Atty., James R. Gough, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before GEE, JOHNSON and DAVIS, Circuit Judges.

JOHNSON, Circuit Judge:

Rudolfo Silva appeals from his conviction for conspiring to commit a bank robbery in violation of 18 U.S.C. §§ 371, 2113(a), 2113(d), and 2113(e). On appeal, Silva argues that the district court abused its discretion when it admitted the testimony of Ray Keck, the president of the robbed bank. Silva argues that Keck's testimony was irrelevant and inadmissible, and that it was presented in an improper narrative form. Silva also asserts that the evidence is insufficient to support his conviction. This Court finds that the district court properly admitted the testimony of Keck, and that the evidence sufficiently supports Silva's conviction. Accordingly, Silva's conviction is affirmed.

I. *Facts*

The indictment in the instant case alleged that Silva, together with Nathan Lum Elliott, Sr., and Nathan Lum Elliott, Jr., conspired to take by force $438,000 belonging to the Union National Bank of Laredo, Texas, "from the person and presence of Ray M. Keck, Jr.," the president of the bank. The Elliotts were named as unindicted coconspirators. Both of the Elliotts testified at trial and implicated Silva in the conspiracy. Keck, the bank president, testified concerning the actual details of the robbery. Silva testified on his own behalf and denied any involvement in the scheme.

The jury returned a guilty verdict, and Silva appeals. On appeal Silva argues that the trial court abused its discretion by allowing Ray Keck to testify. Silva's objection concerning Keck's testimony is twofold. First, Silva argues that Keck's testimony is irrelevant, inadmissible and prejudicial. Second, Silva contends that it was improperly offered in a narrative rather than question and answer form. Finally, Silva maintains that the jury's guilty verdict was not supported by sufficient evidence. Each of these contentions is discussed in turn.

II. *Admissibility of Keck's Testimony*

Silva argues that the district court abused its discretion by admitting the testimony of Keck. Silva asserts that Keck's testimony was not relevant because it involved the actions of persons other than Silva. In reviewing the district court's decision to admit Keck's testimony this Court is guided by the principle that

the district court has wide discretion in determining relevancy. The district court's decision will not be overruled absent substantial abuse. *United States v. Brown,* 692 F.2d 345,.349 (5th Cir.1982). *See United States v. Garr,* 461 F.2d 487, 489–90 (5th Cir.), *cert. denied,* 409 U.S. 880, 93 S.Ct. 170, 34 L.Ed.2d 135 (1972). This Court concludes that the district court did not abuse its discretion in admitting Keck's testimony.

The indictment charged Silva with conspiring to rob the Union National Bank by taking money belonging to the bank "from the person and presence of Ray. M. Keck, Jr.," the bank's president. Keck testified in detail about the April 1983 robbery. He related that his wife had been held hostage by one conspirator, Adams, while Keck was forced to accompany another conspirator, Barfield, to the bank in order to obtain the money. The trial court stated, in overruling Silva's relevancy objection, "... in the first place the conspiracy was allegedly to take money from [Keck] by force and violence. I can't imagine how that [Keck's account of the robbery] would not be relevant." Record Vol. 1 at 83.

■ This Court agrees. Although the acts described by Keck were not committed by Silva, they were highly instrumental in proving the existence and scope of the conspiracy to which Silva had been linked by the testimony of the Elliotts. "Once a defendant has been connected with the conspiracy through his own conduct, all acts and statements of his co-conspirators during the pendency and in furtherance of the conspiracy are admissible against him." *United States v. Jennings,* 527 F.2d 862, 869 (5th Cir.1976). The indictment charged a conspiracy to rob a bank. The acts involving the actual robbing of the bank are obviously within the scope of the conspiracy and highly relevant. *See United*

*States v. Torres,* 685 F.2d 921, 925 (5th Cir.1982); *United States v. Bates,* 600 F.2d 505, 509 (5th Cir.1979). Consequently, testimony concerning these acts is admissible against Silva unless the testimony is so unfairly prejudicial that it is excludable under Fed.R.Evid. 403.

■ Silva argues that Keck's testimony was so prejudicial that it should have been excluded because Keck described the agony that Keck and his wife suffered while they were held hostage. The district court's ruling on admissibility under the balancing test of Fed.R.Evid. 403, which allows exclusion of relevant evidence that is outweighed by the danger of unfair prejudice to the defendant, will not be overturned unless an abuse of discretion is demonstrated. *United States v. Kalish,* 690 F.2d 1144, 1155 (5th Cir.1982), *cert. denied,* 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 958 (1982); *United States v. Stewart,* 579 F.2d 356, 359 (5th Cir.), *cert. denied,* 439 U.S. 936, 99 S.Ct. 332, 58 L.Ed.2d 332 (1978). This Court does not find such an abuse of discretion in the instant case, and we hold that the district court properly admitted Keck's testimony.

■ Silva's objection to the narrative form of the testimony is equally meritless. The district court overruled Silva's objection on this point in an effort to expedite the proceedings by getting "some of the background out." Record Vol. 1 at 83. Silva's counsel does not argue that the narrative form of Keck's testimony precluded him from raising any particular objection. Moreover, once the background information was brought out a question and answer format was followed. Even assuming, *arguendo,* that the district court erred in allowing this narration, such a defect in the proceedings did not affect any of Silva's substantial rights and any error would be harmless. *See* Fed.R.Civ.P. 61.[1]

---

1. Rule 61 provides:
 No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for

setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect

### III. *The Sufficiency of the Evidence*

Silva also contends that the evidence is not sufficient to support the jury's verdict. This Court disagrees. We approach this question in light of the familiar standards set out in *Glasser* and *Bell.* "The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). "It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell*, 678 F.2d 547, 549 (5th Cir.1982) (en banc), *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983) (footnote omitted).

The testimony at trial amply supports the jury verdict. Nathan Elliott, Sr., an unindicted co-conspirator, testified for the Government. Elliott, Sr., stated that he had 10 to 12 discussions with Silva concerning the robbery over a period from November 1982 until April 1983. Elliott, Sr., testified that Silva visited him after the robbery in order to find out how it had "come off" and how much money had been taken. Elliott, Sr., also indicated that Silva suggested targeting a bank in Laredo, Texas, for the robbery because of Laredo's proximity to Mexico. According to Elliott, Sr., Silva agreed to talk to his cousin about recruiting individuals to actually commit the robbery. Silva later told him that he was unable to come up with anyone, and he recommended that Elliott, Sr., look for accomplices in Corpus Christi, Texas. Elliott, Sr., then contacted Adams and Barfield. Silva was not present when those two men were recruited. Elliott, Sr., also identified the revolver used in the robbery and indicated that both the gun and some brass bullets were given to Elliott, Sr., by Silva to use in the robbery. According to Elliott, Sr., Silva was involved in working out

many of the details of the robbery plan, including discussing the terms contained in the note used to secure the cooperation of Keck. The use of walkie-talkies during the robbery and the scheme of using a bomb threat to intimidate the bank president were discussed with Silva.

Elliott, Jr., also testified for the Government. Elliott, Jr., stated that although money arrangements between Silva and Elliott, Sr., were never really settled, Elliott, Jr., had agreed to pay Silva $20,000 for his role in the robbery. Elliott, Jr., stated that he met with Silva and Elliott, Sr., five or six times after January 1983 to discuss the robbery. Elliott, Jr., corroborated Silva's role in writing the note, targeting a Laredo bank, and other details of Silva's involvement in the scheme.

The defense attempted to undermine the Government's case by using the testimony of Cesar Montalvo Franco. Franco testified that Elliott, Sr., had told him that he was going to implicate Silva in the robbery by giving a false lead to the F.B.I. about the location of the money, and by leaving cigarettes of the type that Silva smoked at that site. Elliott, Sr., wished to implicate Silva because he was jealous of Silva's possible involvement with Elliott's wife, according to Franco.

Silva testified on his own behalf. He admitted loaning weapons to Elliott, Sr., but denied that the gun used in the robbery was his. He also admitted that Elliott, Sr., would discuss his plans for a bank robbery with him, but because the discussions took place in front of others, Silva believed that Elliott, Sr., was not serious. Silva denied any other knowledge of or involvement in the robbery. He stated that he was not involved in writing the note, and that he was never promised any money. Silva's cousin testified that Silva never requested his aid in recruiting people to commit the robbery.

 This Court finds the testimony of the Elliotts sufficient to support Silva's conviction. "[P]articipation in a criminal

in the proceeding which does not affect the substantial rights of the parties.

conspiracy need not be proved by direct evidence; a common purpose and plan may be inferred from a 'development and a collocation of circumstances.'" *United States v. Malatesta,* 590 F.2d 1379, 1381 (5th Cir.), *cert. denied,* 440 U.S. 962, 99 S.Ct. 1508, 59 L.Ed.2d 777 (1979). Moreover, a conviction may be based solely upon the uncorroborated testimony of an accomplice if the testimony is not incredible or otherwise insubstantial on its face. *United States v. Moreno,* 649 F.2d 309, 312 (5th Cir.1981). There is nothing inherently incredible or insubstantial about the testimony by the Elliotts linking Silva to the conspiracy. Silva's contention that Elliott, Sr., was a chronic alcoholic who should be disbelieved was presented to the jury. The jury obviously chose to believe Elliott, Sr.'s, testimony, and the Court of Appeals must accept all credibility choices made that tend to support the jury's verdict. *United States v. Rodriguez,* 654 F.2d 315, 317 (5th Cir.1981). *See United States v. Beason,* 690 F.2d 439 (5th Cir.1982), *cert. denied* 459 U.S. 1177, 103 S.Ct. 828, 74 L.Ed.2d 1023 (1983). The evidence sufficiently supports the jury's verdict in the instant case.

### IV. *Conclusion*

The district court properly admitted the testimony of Ray Keck concerning the details of the robbery at issue. Moreover, the evidence supports the jury's verdict. Accordingly, Silva's conviction is

AFFIRMED.