**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John E. McKENZIE, Dale Bonura and**
**Stephen Farrar,**
**Defendants-Appellants.**

Nos. 83–1221, 84–1507 and 84–1508.

United States Court of Appeals,
Fifth Circuit.

July 31, 1985.

---

Ralph Capitelli, New Orleans, La., for McKenzie.

Ralph S. Whalen, Jr., New Orleans, La., for Bonura and Farrar.

William R. Yeomans, Wm. Bradford Reynolds, Walter W. Barnett, U.S. Dept. of Justice, Civ. Rights Div., Appellate Sect., Washington, D.C., for the U.S.

Before CLARK, Chief Judge, RANDALL, and JONES, Circuit Judges.

CLARK, Chief Judge:

Defendants appeal their convictions under 18 U.S.C. § 241 for conspiring to deprive citizens of their civil rights and under 18 U.S.C. § 2 and § 242 for illegally depriving Robert Davis of his liberty and for failing to keep Davis free from harm while in official custody. We affirm.

I

Defendants are officers of the New Orleans Police Department. In 1980 a fellow officer, Gregory Neupert, was killed in the Algiers area of that city. Sergeant John McKenzie commanded the investigation. Detectives Dale Bonura and Stephen Farrar, along with the other defendants, were among those assigned to assist McKenzie.

Seven of these officers were indicted for conspiracy and four counts of criminal civil rights violations because of their conduct during that investigation. Four officers were acquitted completely. The appellants were convicted of conspiracy and one substantive count. They were acquitted of the three other charges.

The conspiracy count charged that these officers, acting under color of law, had conspired to unlawfully obtain information about Officer Neupert's death. According to the relevant portions of the indictment, the defendants accomplished their objective by bringing residents of Algiers to police headquarters for questioning. Several of these individuals were detained, sometimes in cells, for long periods of time. In some cases the detention lasted as long as twelve to sixteen hours. Some of these individuals were handcuffed or tied to a chair during their questioning. Several were hit with fists or books or both. Johnny Brownlee and Robert Davis were also "bagged," a process whereby the officers placed a bag over the victim's head and temporarily sealed the bottom to cut off the air supply. McKenzie, Bonura, and Farrar drove Davis to a secluded area in Algiers where he was beaten and threatened with a gun. Bonura and Farrar also drove Brownlee to a wooded area, where he was beaten and threatened by other officers.

According to the substantive count of which these defendants were convicted, while acting under the color of state law and aiding and abetting each other, they assaulted Davis, thereby depriving him of his liberty without due process of law and violating his right to be kept free from harm while in official custody.

Defendants filed a post-trial motion for a judgment of acquittal notwithstanding the verdict or, in the alternative, for a new trial. Their motion was based on five claims: (1) the evidence was insufficient; (2) a juror misrepresented a fact during voir dire; (3) the government failed to provide Jencks and *Brady* material; (4) the prosecutor's closing remarks were improper; and (5) the court improperly commented on the prosecutor's closing argument and gave an erroneous jury instruction in connection with that argument. They also moved for an evidentiary hearing on their allegation that the government had withheld evidence that it was obliged to give the defense under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and the Jencks Act, 18 U.S.C. § 3500. The evidence in question consisted of a videotaped interview of Davis by the attorney representing him in a civil suit arising out of these same events and the transcript of an interview of Davis by Department of Justice personnel on December 4, 1980. The district court denied all motions.

II

On appeal the defendants contend the record does not contain sufficient evidence to support the verdict. They also assert that they are entitled to a new trial because of the alleged violations of the Jencks Act and *Brady*, or at least to an evidentiary hearing to determine whether evidence was improperly withheld. Finally, they argue that the convictions must be reversed because of prosecutorial misconduct.

All of these arguments are without merit.

## A. *Sufficiency of the Evidence.*

Defendants contend that the evidence is insufficient to support the jury's verdict. Our evaluation of their argument is governed by the standards set out in *Glasser* and *Bell:*

> The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982) (en banc), *aff'd on other grounds,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983) (footnote omitted).

*United States v. Silva,* 748 F.2d 262, 265 (5th Cir.1984). When examined in light of these principles, the testimony supports the jury's verdict on both counts.

### 1. *The substantive offense.*

Both Davis and Oris Buckner, another detective assigned to the Neupert investigation, testified that Davis was beaten by several officers during his interrogation. Buckner, who testified under a grant of immunity, admitted that he had participated in the beating. Davis could not identify any of the officers who hit him except for Buckner and Officer Le Blanc, who was acquitted. In fact, he stated that neither of the two officers who picked him up [Bonura and Farrar] were present. Buckner, however, testified that Bonura and Farrar beat and bagged Davis while questioning him. Bonura and Farrar both testified that they had interviewed Davis, although they denied mistreating him.

Neither Davis nor Buckner implicated McKenzie in any abuse of Davis at the police station. However, McKenzie admitted that he was in and out of the room while Davis was being interrogated. This is sufficient to support the conclusion that he was aware of what was transpiring and did not stop it.

Davis also testified that three officers drove him from police headquarters to a secluded area in Algiers where he was beaten and threatened with a gun by several policemen. He could not identify these officers and testified that he did not remember whether the two officers who had picked him up were present. Buckner gave no testimony related to this incident. The three appellants testified that they did take Davis away from the station for a short time, but that they merely drove him to the scene of Neupert's murder where Davis described what he had seen and pointed out the house of Johnny Brownlee, whom he identified as another witness.

After hearing all the evidence, the jury was faced with a basic conflict: Davis and Buckner testified that Davis had been beaten and defendants maintained that he had been treated properly. The weighing of conflicting evidence and inferences and the determination of the relative credibility of witnesses is a function of the jury. *Boeing Co. v. Shipman,* 411 F.2d 365, 375 (5th Cir.1969) (en banc). Defendants vigorously cross-examined Davis and Buckner to show the jury any inconsistencies in their testimony. In their closing arguments, they emphasized these inconsistencies and Davis's inability to identify any of the defendants convicted as having abused him. By returning a verdict of guilty on this count, the jury implicitly accepted the testimony of Buckner and Davis as credible.

We cannot reassess the validity of their decision, but must accept all credibility choices that tend to support the jury's verdict. *United States v. Davis,* 752 F.2d 963, 968 (5th Cir.1985); *United States v. Silva,* 748 F.2d 262, 266 (5th Cir.1984). Nor can we declare the testimony of Davis and Buckner to be incredible as a matter of law unless it "is so unbelievable on its face that it defies physical laws...." *United States v. Lerma,* 657 F.2d 786, 789 (5th Cir.1981), *cert. denied,* 455 U.S. 921, 102 S.Ct. 1279, 71 L.Ed.2d 463 (1982), *quoted in United States v. Reed,* 715 F.2d 870, 874

(5th Cir.1983). The weaknesses in the testimony of Davis and Buckner do not rise to this standard. Their testimony, along with the testimony of the defendants themselves, provides substantial support for the jury's verdict. Therefore the convictions on the substantive count are affirmed.

### 2. The conspiracy count.

 The sufficiency of the evidence to support a conspiracy conviction is reviewed under the same standard as set forth above. *United States v. Malatesta,* 590 F.2d 1379, 1382 (5th Cir.) (en banc), *cert. denied sub nom. Bertolotti v. United States,* 440 U.S. 962, 99 S.Ct. 1508, 59 L.Ed.2d 777 (1979). The evidence must show that there was an agreement between two or more persons to commit a crime and that one conspirator performed an overt act in furtherance of the agreement. *United States v. Saenz,* 747 F.2d 930, 937 (5th Cir.1984). Direct evidence of a formal agreement is not necessary. *United States v. Wilson,* 657 F.2d 755, 759 (5th Cir.1981), *cert. denied,* 455 U.S. 951, 102 S.Ct. 1456, 71 L.Ed.2d 667 (1982). "[A] common purpose and plan may be inferred from a '"development and collocation of circumstances."'" *Glasser v. United States,* 62 S.Ct. 457, 469 (1942) (citation omitted); *Malatesta,* 590 F.2d at 1381. Proof that the defendants acted in concert to perform acts in furtherance of the purpose of the charged conspiracy can be used as circumstantial evidence from which the jury may infer the existence of an agreement. *United States v. Welch,* 656 F.2d 1039, 1055–56 (5th Cir.1981), *cert. denied,* 456 U.S. 915, 102 S.Ct. 1768, 72 L.Ed.2d 173 (1982).

 The evidence described in the preceding section provides substantial support for the conclusion that these three defendants acted in concert in abusing Davis both during his interrogation at police headquarters and in the woods of Algiers to compel him to identify Neupert's murderer. Furthermore, all three defendants testified that McKenzie interrupted Bonura and Farrar while they were interrogating Davis and told them to put Davis in a holding cell so that the detectives could accompany McKenzie to the scene of a second homicide that had just occurred. Bonura and Farrar testified that Davis consented to this before they locked him in the cell, but Davis testified that he did not want to go into the cell. McKenzie testified that Davis had no choice in the matter. The fact that defendants participated jointly in committing these acts justifies the inference that they had agreed to resort to illegal means to solve Neupert's murder. *See United States v. Reed,* 715 F.2d 870, 874 (5th Cir. 1983).

The abuse of Davis and his confinement in the holding cell were among the overt acts charged in the indictment. The evidence adequately supports the jury's conclusion that the defendants committed these acts. Because a conspiracy conviction requires the proof of only one overt act, it is not necessary to analyze the evidence related to the remaining overt acts. The conspiracy convictions are supported by sufficient evidence.

### B. The Alleged Violation of the Jencks Act and Brady.

*Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963) established that a prosecutor's failure to disclose material evidence favorable to the accused upon request violates due process. The Jencks Act obligates the prosecutor to produce any statement by a witness called by the United States in the possession of the government that relates to the subject matter of the witness's testimony if the court so orders upon defendant's motion after direct examination of the witness has been completed. 18 U.S.C. § 3500(b). Defendants contend that the government violated its duty under both Jencks and *Brady* by failing to provide the defense with copies of the videotape and the transcript.

### 1. The videotape.

The defendants contend that the government possessed a videotape of an interview of Davis by his civil attorney, Mark Lane,

that was taken only days after his experiences at the police station. In support of their claim they have submitted the transcript of a taped telephone conversation between one of the defense attorneys and a former Assistant United States Attorney who had worked on this case. They argue that this transcript establishes that the F.B.I. obtained possession of the tape and screened it for the prosecution team. In opposition the government has submitted affidavits denying possession of the tape, although as defendants note, the F.B.I. affiants do not deny having seen the tape. The prosecutors swear that they have never seen or possessed this videotape.

We will not resolve this dispute or determine whether the tape falls within the ambit of *Brady* or Jencks. The defendants waived their right to production of this tape under either doctrine by failing to properly pursue its discovery during trial.

The record establishes that the defendants knew of this tape, or at least had a firm belief that it existed, before the trial began. In their motion for a new trial, the defendants stated that they first became aware of the possible existence of a Lane/Davis videotape when they found the transcript of a similar interview between Lane and Brownlee in the cartons of Jencks and *Brady* material produced a week before trial. They then requested the government to provide the actual videotape of the Brownlee/Lane interview and also any tape of a Davis/Lane interview. The government denied having any tape or transcript of an interview between Lane and Davis. In his closing argument, one of the defense attorneys reminded the jury of this videotape and asserted that it would be "unfair" to convict these defendants in light of the "gap" in the evidence caused by the fact that the "key videotape [was] missing...."

a. *The Jencks Act.*

■ Even if we assume that defendants were entitled to production of this videotape by the government, they waived their

Jencks rights by failing to pursue their claim for this videotape at trial.

By contacting the former prosecutor about this tape after the trial, the defendants demonstrated that they believed the government did possess the tape or at least had had possession of it at one time. Yet they failed to bring the matter to the attention of the district court during the trial by specifically requesting the tape.

■ Where defendants believe the government has failed to produce a statement covered by the Jencks Act, at the very least they are obligated to alert the trial judge to their claim. They cannot rely on a multipronged pretrial discovery motion to preserve their claims for the appellate court in the event of an unsuccessful defense. *United States v. Peterson*, 524 F.2d 167, 175 (4th Cir.1975), *cert. denied*, 423 U.S. 1088, 96 S.Ct. 881, 47 L.Ed.2d 99 (1976); *United States v. Harris*, 458 F.2d 670, 679 (5th Cir.), *cert. denied sub nom. Scott v. United States*, 409 U.S. 888, 93 S.Ct. 195, 34 L.Ed.2d 145 (1972); *Ogden v. United States*, 303 F.2d 724, 733 (9th Cir. 1962), *cert. denied*, 376 U.S. 973, 84 S.Ct. 1137, 12 L.Ed.2d 86 (1964).

Defendants did specifically request this tape from the government prior to the trial. However, they accepted the government's assertion that it did not have possession of the tape and let the matter drop. A government response is not dispositive of a Jencks claim. Prosecutors and defense attorneys frequently differ on whether a specific item is producible under Jencks. In this case defendants now contend that the government had possession of the tapes for Jencks purposes, even if its attorneys or the F.B.I. agents only viewed the tape while third persons maintained custody. The government might well construe possession in a more restrictive sense. Only by properly placing their claim before the trial court could the defendants ensure that their rights under the Jencks Act would be fully realized.

■ Enforcement of the Jencks Act is an affirmative duty of the trial court.

*United States v. Peters,* 625 F.2d 366, 370 (10th Cir.1980). It may not rely on government assertions alone to resolve disputes about the adequacy of disclosure under the Act. *United States v. Conroy,* 589 F.2d 1258, 1272–73 (5th Cir.1979). If defendants had moved for production of this tape, the trial court would have been obliged to take whatever steps were necessary to determine if the videotape was in the government's possession. *United States v. Knox Coal Co.,* 347 F.2d 33, 47 (3d Cir.), *cert. denied,* 382 U.S. 904, 86 S.Ct. 239, 15 L.Ed.2d 157 (1965). *See United States v. Kasouris,* 474 F.2d 689, 690–92 (5th Cir. 1973). By allowing their claim to rest without seeking a ruling from the district court, the defendants effectively abandoned it. *United States v. Lyman,* 592 F.2d 496, 498–99 (9th Cir.1978), *cert. denied,* 442 U.S. 931, 99 S.Ct. 2864, 61 L.Ed.2d 300 (1979); *Lewis v. United States,* 340 F.2d 678, 682–83 (8th Cir.1965); *United States v. Paroutian,* 319 F.2d 661, 664 (2d Cir.1963), *cert. denied,* 375 U.S. 981, 84 S.Ct. 494, 11 L.Ed.2d 426 (1964).

b. *Brady*

■ *Brady* does not oblige the government to provide the defendants with evidence that they could obtain from other sources by exercising reasonable diligence. *E.g., United States v. Bi-Co Pavers, Inc.,* 741 F.2d 730, 736 (5th Cir.1984). When evidence is available equally to the defense and the prosecution, the defendants must bear the responsibility of their failure to diligently seek its discovery. *United States v. Milstead,* 671 F.2d 950, 953 (5th Cir.1982).

It was obvious that Lane, if not the government, possessed this tape if it did exist. Yet defendants failed to subpoena Lane to produce the tape. Defendants contend that they did seek to obtain the tape from Lane, but that he declined to give it to them, asserting that it was protected by the attorney/client privilege. Because defendants did not seek a court ruling on Lane's response, the validity of his claim of privilege was never determined. The trial court may have upheld Lane's position. Such a ruling obviously would have altered the posture of the case. However, defendants chose not to present this question to the court. Therefore, they cannot rely on Lane's assertion of privilege to circumvent the limit upon the government's *Brady* obligations described in *Bi-Co Pavers.*

2. *Davis's statement.*

On December 4, 1980 Davis was interviewed by two F.B.I. agents. An attorney from the Department of Justice and an Assistant United States Attorney were present, along with Davis's private attorney. This interview was tape recorded and then transcribed into a 53 page statement. Subparagraph (e)(2) of the Jencks Act includes the transcript of a recorded statement within the Act's ambit. *N.L.R.B. v. Safway Steel Scaffolds Co.,* 383 F.2d 273, 278 (5th Cir.1967), *cert. denied,* 390 U.S. 955, 85 S.Ct. 1052, 19 L.Ed.2d 1150 (1968). *See United States v. Martino,* 648 F.2d 367, 368 n. 9 (5th Cir.1981), *cert. denied sub nom. Lazzara v. United States,* 456 U.S. 943, 102 S.Ct. 2006, 72 L.Ed.2d 465 (1982). The government concedes that it had possession of the statement. The statement, in its entirety, clearly relates to the subject matter of Davis's testimony. Therefore, failure to produce it violates the Jencks Act.

■ Defendants contend that the government failed to produce this statement as required by *Brady* and the Jencks Act. They insist that they were unaware of its existence until they saw the transcript cited in the list of materials the government claimed to have disclosed in their response to defendants' post-trial motions. The government maintains that it included this statement in the three cartons of Jencks and *Brady* material disclosed before trial. The trial judge deemed it unnecessary to resolve this conflict because he concluded that even if the government had failed to produce the transcript, neither Jencks nor *Brady* would require a new trial. We agree.

The trial judge found that the prosecutor had acted in good faith and that the defendants had failed to show that they were prejudiced by the nondisclosure. His finding of no prejudice was based in part on his conclusion that the defense had received the substance of the December 4 statement because the government had disclosed a three page statement which had been prepared by the F.B.I. agents and signed by Davis on December 18, 1980. The government characterizes this statement as a summary of the December 4 statement, although there is nothing in this document that identifies it as a summary or in any way indicates that the longer transcript existed. Furthermore, he found that the transcript would have been useful only for impeachment purposes. Because the defense was able to thoroughly impeach Davis by means of his grand jury testimony and other statements, the judge concluded that the December 4 transcript merely provided cumulative material.

a. *The Jencks Act.*

█ Defendants' failure to specifically request the district court to order production of this document does not affect their ability to raise this claim in a post-trial motion or on appeal. The claim for the transcript is distinguishable from their claim for the Davis/Lane videotape because the defense was unaware of the transcript's existence until after the trial. The rationale behind our ruling that they abandoned their claim to the videotape is inapplicable to the transcript.

█ The language of the Jencks Act requires that defendant move the court for production of any covered statements after the witness has testified before the government's duty to disclose attaches. 18 U.S.C. § 3500(b). *United States v. Atkinson*, 512 F.2d 1235, 1240 (4th Cir.1975). *See United States v. Jimenez*, 613 F.2d 1373, 1378 (5th Cir.1980). The trial court cannot compel disclosure of Jencks material at any earlier point. *United States v. Gatto*, 533 F.2d 264, 265 (5th Cir.1976). Here, however, the government agreed to produce the Jencks

material when it fulfilled its pretrial disclosure obligations. This court has recognized such early Jencks disclosure as a salutary practice that should be encouraged to avoid the interruptions and delay at trial that are inevitable if the defense does not receive the material until the conclusion of the direct testimony. *United States v. Campagnuolo*, 592 F.2d 852, 858 n. 3 (5th Cir.1979). When the government agrees to early disclosure, it obviates the need for a Jencks motion by the defendant at the close of each witness's testimony. However, such an agreement does not lessen the government's obligation to produce all material covered by Jencks. *See United States v. Badalamente*, 507 F.2d 12, 16–18 (2d Cir.1974), *cert. denied*, 421 U.S. 911, 95 S.Ct. 1565, 43 L.Ed.2d 776 (1975).

█ The district court should not have relied on the prosecution's good faith in evaluating the Jencks claim. As we stated in *United States v. Beasley*, 576 F.2d 626, 627 (5th Cir.1978), *cert. denied*, 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979), only results, not motive, are relevant to the question of whether the government violated its statutory duty. Unless a nondisclosure was harmless error, reversal is required even where the prosecution has acted in good faith. *Id.*

█ Because courts are not permitted to speculate on the potential usefulness of a disputed statement in evaluating a Jencks claim, the harmless error doctrine must be applied strictly in reviewing such a case. *Goldberg v. United States*, 425 U.S. 94, 96 S.Ct. 1338, 1348 n. 21, 47 L.Ed.2d 603 (1976). Under this scrupulous standard a Jencks violation may be deemed harmless only where it has no "substantial influence" on the judgment. *United States v. Beasley*, 576 F.2d at 629 (5th Cir.1978).

We do not agree with the district judge's conclusion that the government's production of the three page December 18 statement satisfied the government's Jencks obligations related to the December 4 statement by giving defendants the substance of the earlier interview. Even if the sec- ·

ond statement can be regarded as a summary of the first, it reduces a 53 page transcript to three pages. Although the short statement does provide a factual outline of Davis's version of the events, it is devoid of any of the details necessary for the effective impeachment of Davis at trial.

However, we do agree with his conclusion that any failure to produce this statement does not require a new trial. The December 4 interview does not contain any information that could be used to impeach Davis which was not also contained in either the December 18 statement or the grand jury testimony given to defendants before trial.

The trial judge permitted the defendants to cross-examine Davis at great length because of the importance of his testimony. Defendants used Davis's grand jury testimony and his other statements to subject him to an effective cross-examination regarding many inconsistencies or discrepancies in the various descriptions Davis had given of the events at issue. The December 4 transcript did not contain any additional information that would have aided their cross-examination. At most the statement provides only minor cumulative impeachment material. Assuming the government did fail to produce it contrary to the Jencks Act, the error is harmless. *See United States v. Wables,* 731 F.2d 440, 448–49 (7th Cir.1984); *United States v. Crowell,* 586 F.2d 1020, 1028 (4th Cir.1978), *cert. denied,* 440 U.S. 959, 99 S.Ct. 1500, 59 L.Ed.2d 772 (1979); *United States v. Anthony,* 565 F.2d 533, 537 (8th Cir.1977), *cert. denied,* 434 U.S. 1079, 98 S.Ct. 1274, 55 L.Ed.2d 787 (1978).

Defendants rely heavily on *United States v. Beasley,* 576 F.2d at 633, where this court recognized the importance of being able to impeach a witness with his own words. However, these defendants did have Davis's own words to use on cross-examination. The fact that these words came from the grand jury testimony and other statements produced, instead of from the transcript of the December 4 interview does not entitle defendants to a new trial.

**b. *Brady***

Davis's December 4 statement, in which he describes his detention and mistreatment by police officers, cannot be considered exculpatory material. The basic facts in that statement are essentially consistent with his testimony at trial. The statement would have been useful only as a source of impeachment material. *Brady* requires the prosecutor to produce evidence that is useful for impeachment, as well as exculpatory material. *United States v. Bagley,* —— U.S. ——, ——, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985). However, *Brady* mandates the reversal of a conviction only if the evidence withheld is material. 83 S.Ct. at 1196–97. "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* at 3384. Because this statement contains only cumulative impeachment material, it is altogether improbable that its production would have changed the jury's verdict.

### C. *Prosecutorial Misconduct.*

In their final argument, defendants contend that they were deprived of a fair trial because of the prosecutor's conduct. They focus in particular on the prosecutor's remarks about defendants' arguments related to the allegedly missing Lane/Davis videotape and the alleged withholding of evidence.

One defense attorney, in his closing argument, told the jury that it would be unfair to convict these defendants without seeing the videotape of the interview between Lane and Davis. He strongly implied that the government had deliberately withheld the tape. In response, the prosecutor stated in part that the jury should reject the defense's implication that the government was withholding the video tape to frame the defendants. Defendants contend that his remark was unduly prejudicial in that it accused the defense of creating a

fabrication while asserting that the government would never indulge in such conduct.

█ Because of defendant's failure to pursue discovery of this tape in the trial court, we cannot now determine if the tape existed and whether it was withheld. The defense chose to raise the issue of the tape in their closing argument; the prosecution simply responded in kind. The district court found nothing improper about the prosecutor's remarks. Our test is more restrictive. We find no error affecting substantial rights of any party.

We have already addressed the alleged incidents of withheld evidence and concluded that defendants' allegations do not entitle them to a new trial. Further discussion of this point is unnecessary.

### III

The convictions of these defendants are supported by sufficient evidence. Their claims for relief under *Brady v. Maryland* and the Jencks Act are without merit as are their contentions about prosecutorial misconduct. The convictions and post-trial rulings of the district court denying a new trial or an evidentiary hearing are

AFFIRMED.